IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN MOZDZIERZ | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 06-3877 |
| ACCENTURE, LLP | : | |

**SURRICK, J.**                                                    **OCTOBER  28 , 2010**

## MEMORANDUM

Steven Mozdzierz ("Plaintiff") filed this action against Accenture, LLP ("Defendant"),

for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et*

*seq.*, violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et*

*seq.*, breach of contract, and estoppel.  Presently before the Court is Defendant's Motion to

Dismiss.  (ECF No. 27.)  For the following reasons, Defendant's Motion will be granted.

## I.    BACKGROUND

Plaintiff's Verified Amended Complaint alleges that Plaintiff was employed as a software

programmer with Defendant Accenture.  (Am. Compl. ¶ 4, ECF No. 25.)  While employed by

Defendant, Plaintiff developed severe back pain that precluded him from performing his duties

without accommodations by Defendant.  Plaintiff went out on long-term disability in 2002.  (*Id.*

¶¶ 5, 9.)  Sometime between 2002 and 2004, a dispute arose between Plaintiff and Defendant

regarding whether Defendant was providing Plaintiff with reasonable accommodations for his

disability.  (*Id.* ¶ 6.)  In February 2004, Plaintiff filed a charge with the Equal Employment

Opportunity Commission ("EEOC") alleging employment discrimination in violation of the

ADA.  (*See* Def.'s Mot. Dismiss Am. Compl. 2, Jan. 18, 2008, ECF No. 27; Am. Compl. ¶ 7.)

Plaintiff and Defendant, who were each represented by counsel, entered into a settlement

agreement (the "Settlement Agreement") to resolve Plaintiff's claims arising out of his 2004

charge. (Am. Compl. ¶ 7; *see generally* Settlement Agreement, Def.'s Mot. Dismiss Ex. A, Jan.

30, 2007, ECF No. 9.) The Settlement Agreement provides in the third recital that Plaintiff's

"employment with Accenture will cease at the end of 2004 pursuant to the applicable Accenture

policies and procedures."[1] (*See* Settlement Agreement Recitals.) The Settlement Agreement also

provides that Plaintiff would be paid $60,000 "in full settlement of all claims against Accenture."

(*Id.* ¶ 1.) In return for the $60,000 payment, Plaintiff agreed to

> completely waive[] and release[] Accenture . . . from all . . . causes of action of any
> kind he has or may have against [Accenture] from the beginning of time through and
> including the date he signs this Agreement, including but not limited to all claims and
> causes of action brought in the [EEOC] Charges and/or related to or any way growing
> out of his employment with Accenture or the termination of that employment.

(*Id.* ¶ 6.) The Settlement Agreement specifically states that Plaintiff waived any claims arising

"under Accenture's handbook or personnel policies." (*Id.*) Plaintiff also agreed to "relinquish

any and all rights to employment with Accenture following his termination at the end of 2004."

(*Id.* ¶ 13.)

As of September 1, 2002, Defendant's disability leave-of-absence policy provided for a

January 1, 2005, termination date for all employees who had been on disability leave since

September 1, 2002, or earlier. This group of employees included Plaintiff. (Pl.'s Resp. Ex. C,

ECF No. 29.) On December 9, 2004, Defendant sent a letter to its employees who had been on

disability leave since September 1, 2002, informing them of a change in its policy regarding

---

[1] We may consider attachments to the Amended Complaint without converting
Defendant's Motion to Dismiss into a Motion for Summary Judgment. *See In re Burlington
Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or
explicitly relied upon in the complaint may be considered without converting the motion [to
dismiss] into one for summary judgment." (citations and internal quotation marks omitted)).

disability leave.  As a result of an error, Plaintiff received this letter.  (Am. Compl. ¶ 9; Def.'s

Mot. Dismiss Am. Compl. 3-4.)  The letter stated that instead of terminating Plaintiff on January

1, 2005, as Defendant's policies had previously indicated, Defendant had decided to allow

employees who were on disability leave to retain their leave-of-absence status.  (Pl.'s Resp. Ex.

A.)  As a result, Plaintiff canceled his Medicare benefits, which he had obtained to cover his

healthcare when his employment terminated on January 1, 2005.  (Am. Compl. ¶ 10.)  When

Defendant realized that it had sent this letter to Plaintiff, it sent a January 10, 2005, letter to

Plaintiff explaining that his receipt of the December 9, 2004, letter was in error.  (*See* Letter from

Katherine Ovadia to Steven Mozdzierz, on file with Court.[2])  The January 10 letter explained to

Plaintiff that he would not be included in the policy change because "unlike other persons who

received the [December 9, 2004] letter, you negotiated and entered into a confidential General

Release and Settlement Agreement with Accenture in which you received money in exchange

for, among other things, the relinquishment of your employment rights with Accenture after

December 31, 2004."  (*Id.*)  Defendant terminated Plaintiff's employment and canceled his

medical benefits shortly thereafter.  (Am. Compl. ¶ 12.)  Plaintiff filed a new charge with the

EEOC on June 10, 2005, in which he checked the boxes on the form indicating discrimination

based on "Retaliation" and "Other."  (Def.'s Mot. Dismiss Am. Compl. Ex. 1.)  The EEOC

subsequently issued Plaintiff a right-to-sue letter.  (Am. Compl. ¶ 17.)  On October 24, 2005,

Defendant and Aetna, which administers Defendant's benefits plan, terminated Plaintiff's

---

[2] Plaintiff's counsel has not put electronic versions of the exhibits to his court filings on
ECF.  The Court is in possession of hard copies of these exhibits, but they are not bound to the
filings they accompany, and in some cases there is no indication whether they are Exhibit A, B,
C, etc.  As a result, our citations to Plaintiff's exhibits may be inaccurate.

disability benefits.  (*Id.* ¶ 18.)  Plaintiff filed a complaint against Defendant on September 19,

2006, and Defendant moved to dismiss.  (*See* ECF Nos. 3, 9.)  Plaintiff subsequently amended

his complaint.  Defendant again moved to dismiss.  (*See* ECF Nos. 25, 27.)  The matter is now

ripe for disposition.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In *Iqbal*, the Supreme Court set

forth a two-part analysis that district courts must conduct when reviewing a complaint challenged

under Rule 12(b)(6).  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)

(describing *Iqbal*'s two-step inquiry).  The district court must first separate "the factual and legal

elements of a claim," accepting all of the complaint's well-pleaded facts as true but rejecting

legal conclusions.  *Id.* at 210 (citing *Iqbal*, 129 S. Ct. at 1949); *see also Iqbal*, 129 S. Ct. at 1949-

50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice [to state a claim].").  Under this analysis, well-pleaded factual

allegations are to be given a presumption of veracity.  *Iqbal*, 129 S. Ct. at 1950.  The district

court must then "determine whether the facts alleged in the complaint are sufficient to show that

the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S.

Ct. at 1950).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *Id.*  A complaint that demonstrates entitlement to relief

through well-pleaded facts will survive a motion to dismiss. *See id.* Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

## III. ANALYSIS

### A. Count I—Discrimination in Violation of ADA Title I

Plaintiff alleges in Count I of the Amended Complaint that Defendant discriminated against him based on his disability in violation of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(1), and 12112(b)(2).[3] Defendant argues that Plaintiff's disability discrimination action must be dismissed because Plaintiff has not exhausted his administrative remedies. (Def.'s Mot. to Dismiss Am. Compl. 6-8.) Plaintiff counters that his disability discrimination claim is within the scope of his previous EEOC charge and therefore it is not barred. (Pl.'s Resp. 4-11 (citing *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984)).)

The ADA requires that a plaintiff exhaust his administrative remedies before pursuing an action in court for disability discrimination. *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999). However, a Plaintiff is not required to file a second EEOC complaint if the acts alleged "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters*, 729 F.2d at 237. In *Waiters*, the plaintiff filed an informal complaint with the EEOC

---

[3] Plaintiff repeats these allegations in Count V under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat § 955. Because the PHRA is generally interpreted in accord with its federal counterparts, our analysis of Plaintiff's ADA claims applies with equal force to his PHRA claims. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

alleging that the promotion of a male coworker instead of her violated the ADA. *Id.* at 235. The plaintiff subsequently filed a formal complaint with the EEOC alleging that she had suffered continuing discrimination in retaliation for her filing the informal complaint. *Id.* Approximately two years after she filed the formal EEOC complaint for retaliation, the plaintiff's employer conducted an investigation of her based on numerous allegations of misconduct. The plaintiff was terminated at the conclusion of the investigation. *Id.* at 236. The plaintiff brought suit under Title VII, alleging that her firing was in retaliation for exercising her rights under Title VII. *Id.* The district court dismissed the plaintiff's complaint, holding that she had failed to exhaust her administrative remedies as required by Title VII. *Id.* The Third Circuit reversed, finding that although "the allegedly discriminatory officials and acts are different, the core grievance—retaliation—is the same and, at all events, it is clear that the allegations of the appellant's complaint fall within the scope of the [EEOC's] investigation of the charges contained in the 1979 formal complaint." *Id.* at 238.

While the Third Circuit has stressed that whether an action falls within the scope of the EEOC charge is "fact specific," *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997), courts in this circuit frequently find that an ADA or Title VII action falls within the scope of a previous EEOC complaint where the charge is the same in both cases. *See, e.g.*, *Waiters*, 729 F.2d at 238 (finding that plaintiff's Title VII action was within the scope of previous EEOC investigation because "the core grievance—retaliation—is the same"); *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 584 (E.D. Pa. 2005) ("Because Albright alleges retaliation in her second EEOC charge, the related and continued retaliation in her third charge can be said to fall fairly within the scope of the prior EEOC complaint." (citations and internal quotation marks omitted)); *Kiburz v.*

*England*, No. 04-2247, 2005 WL 2314152, at *4 (M.D. Pa. Sept. 21, 2005) ("The court [in *Waiters*] emphasized that, despite the different circumstances and officials involved in the retaliation allegations asserted in the two complaints, the core grievance—retaliation—was the same in both instances.") (citing *Waiters*, 729 F.2d at 238); *cf. Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (holding that plaintiff's sex discrimination claim was not within the scope of the EEOC's investigation of his disability discrimination charge); *Flowers v. Univ. of Penn. Health Sys.*, No. 08-3948, 2009 WL 1688461, at *10 (E.D. Pa. June 16, 2009) (finding that plaintiff's retaliation claim did not fall within the scope of the EEOC investigation of his discrimination claim because "[t]he EEOC charge and Plaintiff's PCHR complaint never mention the word 'retaliation,' focusing instead on discrimination claims"); *Wilson-Thomas v. Small Bus. Admin.*, No. 89-1669, 1989 WL 89279, at *3 (E.D. Pa. 1989) ("[U]nlike the situation in *Waiters*, the subject of plaintiff's prior EEOC complaint and Title VII action (race and sex discrimination) is entirely different from the subject of the case sub judice (retaliation). Accordingly, plaintiff must first file a timely charge with the EEOC concerning her claim of retaliation before she can proceed in this court.").

There is no requirement, however, that a district-court action under the ADA or Title VII must allege the same cause of action as the EEOC charge to be within the scope of the EEOC investigation. The fact-specific nature of the inquiry leaves ample room for exceptions. At least one district court in this circuit has found that a plaintiff had not exhausted administrative remedies on his retaliation claim even where he had previously filed a charge of retaliation with the EEOC against the same defendant. *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 434-35 (E.D. Pa. 2007) (finding that plaintiff's retaliation claim was not within the scope of his previous

EEOC charge alleging retaliation because the facts supporting the second retaliation claim did not appear in the EEOC charge even though they occurred before plaintiff filed the EEOC complaint). Moreover, at least one district court in this circuit has found that a retaliation claim fell within the scope of the plaintiff's hostile work environment charge with the EEOC. *E.E.O.C. v. Mask Enters., LLC*, No. 07-359, 2008 WL 3891261, at *7 (W.D. Pa. Aug. 19, 2008) (finding that plaintiff's retaliation claim was "directly linked" to the hostile work environment charge she brought before the EEOC).

In the instant case, Plaintiff checked the "Retaliation" and "Other" boxes on his EEOC charge. He did not check the "Discrimination" box. In addition, Plaintiff does not allege in the EEOC charge that Defendant had discriminated against him because of his disability. (*See* ECF No. 27 Ex. 3.) Plaintiff argues that because he checked the "Other" box on the EEOC charge, "Plaintiff is entitled to the reasonable inference . . . that 'other', in light of the apparent scope of the investigation, must mean something more than retaliation. Since disability discrimination is the only other relevant focus, it is reasonable to conclude that's exactly what was considered." (Pl.'s Resp. 9.) We conclude that Plaintiff cannot use the "Other" box on the EEOC charge to bootstrap his way into a discrimination cause of action. If Plaintiff wished to allege discrimination, he should have simply checked the "Discrimination" box. To hold otherwise would transform the "Other" box on EEOC charges into a litigation wildcard that could later be turned into any cause of action a plaintiff wishes to assert.

Plaintiff also notes that the retaliation charge that he filed with the EEOC was based on his previous charge with the EEOC alleging disability discrimination. He argues that the scope of the EEOC investigation was necessarily broader than just the 2005 retaliation incident, and

that the earlier disability discrimination charge was a but-for cause of the retaliation charge. (Pl.'s Resp. 7-8.)  This connection is too tenuous to establish that Plaintiff's disability discrimination claim falls within the scope of his EEOC charge.[4]  Plaintiff did not allege disability discrimination in his EEOC charge, and there is nothing in the EEOC Determination to suggest that the EEOC investigated or should have investigated a disability discrimination claim on Plaintiff's behalf.  To the contrary, the Determination clearly states that the "Charging Party alleged that the decision to exclude him from its policy change was in retaliation for having filed a prior charge."  (Def.'s Mot. Dismiss Am. Compl. Ex. 4 at 1.)  The Determination concludes that "[t]he Respondent's decision to exclude only the Charging Party because of the language in the settlement agreement to terminate him *is in retaliation for* the Charging Party's prior charge. . . .  Based on this analysis, I have determined that the evidence establishes a violation of the ADA."  (*Id.* Ex. 4 at 2 (emphasis added).)

Plaintiff failed to check the "Discrimination" box on his EEOC charge and did not provide any information in the charge that should have led the EEOC to investigate a possible discrimination claim.[5]  The EEOC Determination makes no mention of a discrimination claim, and there is no basis to find that the EEOC should have investigated a discrimination claim on Plaintiff's behalf.  Plaintiff's disability discrimination claim is therefore not "fairly within the

---

[4] The Settlement Agreement between Plaintiff and Defendant bars Plaintiff from pursuing any cause of action arising out of the disability discrimination charge.  (*See* Settlement Agreement ¶ 6.)  This EEOC charge therefore cannot serve as the basis for Plaintiff's disability discrimination claim in this action.

[5] As Defendant notes, it would have been counterintuitive for the EEOC to investigate a disability discrimination claim based on Plaintiff's charge, which alleged that Plaintiff was not afforded the same treatment as other disabled Accenture employees.  (*See* Def.'s Reply 3, March 4, 2008, ECF No. 31.)

scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters*, 729 F.2d at

237. Accordingly, Count I of the Amended Complaint fails to state a plausible claim for relief.

### B.     Count II—Retaliation in Violation of ADA Title V[6]

Plaintiff alleges that Defendant violated the ADA by excluding him from the policy

change that would have let him stay on as an employee after January 1, 2005, and by terminating

his medical benefits in retaliation for his filing suit against Defendant. (Am. Compl. ¶¶ 38-39.)

Defendant argues that this claim is inextricably linked to the Settlement Agreement and is

therefore barred. (Def.'s Mot. Dismiss Am. Compl. 9.) Defendant appears to be correct;

however, we need not decide whether this claim is barred by the Settlement Agreement since

Plaintiff has failed to allege sufficient facts to state a claim for retaliation under the ADA.

The factual allegations in Plaintiff's Amended Complaint fail "to raise a right to relief

above the speculative level." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d

159, 176 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Plaintiff alleges that

"DEFENDANT discriminated against PLAINTIFF based on his disability and advised

PLAINTIFF that it had revoked PLAINTIFF'S employee status and cancelled PLAINTIFF'S

medical benefits as an employee of DEFENDANTS" and that "Accenture's exclusion of Plaintiff

from the policy change instituted by DEFENDANT in 2004/2005 constitutes a violation of Title

V of the ADA." (Am. Compl. ¶¶ 12, 39.) These are precisely the kind of conclusory allegations

that the Supreme Court has found to be insufficient to state a claim under Rule 12(b)(6). *Great*

---

[6] The Amended Complaint contains two counts that are labeled as "Count II." (Am. Compl. ¶¶ 33-41.) In his response to Defendant's Motion to Dismiss, Plaintiff stipulated to dismissal of the first Count II. (Pl.'s Resp. 1.) We therefore address only Plaintiff's cause of action for retaliation under ADA Title V.

*W. Mining*, 615 F.3d at 176 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). Plaintiff's allegations establish only that Defendant did precisely what it paid Plaintiff $60,000 for the right to do, and what the Settlement Agreement that Plaintiff signed explicitly permitted Defendant to do: terminate Plaintiff's employment and the benefits that were incidental to his employment. Plaintiff has failed to allege any facts that would suggest that Defendant excluded him from the policy change and terminated his benefits in retaliation for Plaintiff asserting his rights under the ADA. Count II therefore fails to state a claim for relief under Rule 12(b)(6).

### C. Count III—Breach of Settlement Agreement

Plaintiff alleges that Defendant breached the Settlement Agreement when it terminated his employment in January 2005. (Am. Compl. ¶¶ 43-48.) Plaintiff bases this contention on the third recital in the Settlement Agreement, which states that Plaintiff's "employment with Accenture will cease at the end of 2004 pursuant to the applicable Accenture polices and procedures." (Settlement Agreement 1.) According to Plaintiff, he should not have been terminated at the end of 2004 because the applicable policies and procedures changed to allow employees who were out on long-term disability to remain employees after January 1, 2005. Since he was not given the benefit of this change in the policies and procedures, Plaintiff asserts that Defendant breached the Settlement Agreement.

Plaintiff's argument fails. "Recitals in a contract, such as 'whereas' clauses, are merely explanations of the circumstances surrounding the execution of the contract, and are not binding

obligations unless referred to in the operative provisions of the contract." 17A C.J.S. *Contracts*

§ 317 (2010); *see also Grynberg v. F.E.R.C.*, 71 F.3d 413, 416 (D.C. Cir. 1995) ("[I]t is standard

contract law that a Whereas clause, while sometimes useful as an aid to interpretation, cannot

create any right beyond those arising from the operative terms of the document." (citations and

internal quotation marks omitted)); *Nelson Dairies, Inc. v. Royal*, 6 Pa. D. & C.2d 371, 373 (Pa.

Ct. Com. Pleas 1956) ("[T]he general rule [is] that recitals in a contract will not control the

operative clauses thereof unless the latter are ambiguous."). The operative clauses of the

Settlement Agreement could not be clearer: "Mozdzierz agrees to relinquish any and all rights to

employment with Accenture following his termination at the end of 2004." (Settlement

Agreement ¶ 13.) This is not ambiguous, and Plaintiff's creative interpretation of the third recital

in the Settlement Agreement cannot introduce ambiguity into what is a very clear agreement.

Plaintiff argues in his opposition to Defendant's Motion to Dismiss that the Settlement

Agreement was modified when Defendant sent the December 9, 2004, letter to Plaintiff advising

him that he would be permitted to remain with Accenture as an employee on disability leave.

Plaintiff argues that his January 29, 2005, letter to Defendant that purported to agree to

Defendant's December 9, 2004, letter constituted an acceptance to Defendant's offer to modify

the Settlement Agreement. (Pl.'s Resp. 14-15; *see also id.* Ex. B.)

There is no allegation in Plaintiff's Amended Complaint that the Settlement Agreement

was modified by the exchange of letters between Plaintiff and Defendant. Since Plaintiff may

not present new claims in his opposition to the Motion to Dismiss, we need not consider this

argument. *See Perkins v. Central Mortg. Co.*, 422 F. Supp. 2d 487, 492 n.7 (E.D. Pa. 2006)

(refusing to consider new breach of contract claim that was presented for the first time in

plaintiff's opposition to motion to dismiss).  Even if we were to consider Plaintiff's new breach

of contract argument, we would find it lacking.  The attachments to the Amended Complaint and

briefs in this case make it clear that even if Defendant's December 9, 2004, letter could somehow

be considered an offer to modify the Settlement Agreement, Defendant rescinded the offer in its

letter of January 10, 2005, nearly three weeks before Plaintiff sent Defendant a letter "accepting"

the offer to modify the Settlement Agreement.  Plaintiff's argument is without merit.  Count III

of Plaintiff's Amended Complaint will be Dismissed.

      D. **Count IV—Estoppel**

      Plaintiff's Amended Complaint alleges a cause of action for "estoppel".  We interpret this

as a claim for promissory estoppel.  Defendant argues that a cause of action for promissory

estoppel will not lie where there is a valid contract between the two parties.  (Def.'s Mot.

Dismiss Am. Compl. 17-18.)  Defendant also contends that Plaintiff's state-law promissory

estoppel claim is barred by the Employee Retirement Income Security Act ("ERISA"), which

preempts any state laws that relate to employee benefits plans covered by ERISA.  We agree that

the presence of a contract between Plaintiff and Defendant defeats Plaintiff's estoppel claim.

      "Under Pennsylvania law, an enforceable contract between two parties precludes relief

for a claim of promissory estoppel." *Isobunkers, L.L.C. v. Easton Coach Co.*, No. 09-879, 2010

WL 547518, at *4 (E.D. Pa. Feb. 9, 2010) (citing *Carlson v. Arnot-Ogden Mem'l. Hosp.*, 918

F.2d 411, 416 (3d Cir.1990)).  Promissory estoppel is generally invoked where the elements for

formation of a contract have failed, but justice nonetheless requires judicial enforcement of one

party's promise to another. *Carlson*, 918 F.2d at 416.  Where an express contract governs the

relationship of the parties, however, "a party's recovery is limited to the measure provided in the

express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).

Plaintiff cannot dispute that he is a party to a valid contract with Defendant that clearly sets forth the duties and obligations of both parties regarding Plaintiff's employment with Defendant. Indeed, Plaintiff does not even address this argument in his Reply. Since there is a valid contract between the parties, Plaintiff's promissory estoppel claim fails.

### E.    Leave to Amend

Generally, district courts should grant plaintiffs leave to amend their complaint to correct any deficiency unless amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). It is clear that Plaintiff's claims cannot be cured by amendment. Indeed, many of them border on being frivolous. Plaintiff entered into a Settlement Agreement with Defendant. Plaintiff took $60,000 from Defendant in return for his promise not to seek employment with Defendant after January 1, 2005. Plaintiff now seeks to recover against Defendant for doing precisely what Defendant paid Plaintiff $60,000 for the right to do: terminate Plaintiff's employment after January 1, 2005. A single administrative error by Defendant does not alter the situation. Any amendment to Plaintiff's complaint would be futile.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.  Plaintiff's

Amended Complaint is dismissed with prejudice.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**